# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARWIN STRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-01644-TWP-DML |
| | ) | |
| DELAWARE COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Delaware County's ("the County") Motion for Summary Judgment against Plaintiff Marwin Strong ("Mr. Strong"). Following a demotion and then termination of his employment as building commissioner for Delaware County, Indiana, Mr. Strong brought claims against the County under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 ("Title VII") and 42 U.S.C. § 1981 ("§ 1981").[1] For the reasons set forth below, the County's Motion (Dkt. 30) is **GRANTED in part and DENIED in part**.

## I.    FACTUAL BACKGROUND

The following material facts are not in dispute and are viewed in light most favorable to Mr. Strong as the non-moving party. *See Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 728 (7th Cir. 2011). Mr. Strong, an African-American, was appointed Delaware County building commissioner on January 1, 2007. Prior to the appointment, he had been employed as a public housing manager for the Muncie Housing Authority. In that position, his primary duties were to certify resident eligibility, lease apartments to eligible persons, perform move-in and move-out

---

[1] Mr. Strong's *pro se* Complaint (Dkt. 1) originally included a claim for age discrimination brought under the Age Discrimination in Employment Act, 29 U.S.C. § 631 ("ADEA"). However, Mr. Strong was born in January 1977; therefore, he is not within the protected class of individuals age 40 or older under the ADEA. Mr. Strong does not present any arguments on this claim in his Response. To the extent that Mr. Strong asserts an ADEA claim, the Court finds that this claim is dismissed.

inspections, and supervise maintenance workers to ensure the apartment units and buildings met housing standards and applicable building codes of the Department of Housing and Urban Development.  While working as a public housing manager, Mr. Strong obtained a Public Housing Manager certificate through a written test, which covered various issues that a public housing manager would have to oversee, including maintenance of the property.

In late 2006, Mr. Strong submitted a resume and cover letter to John Brooke ("Mr. Brooke"), following Mr. Brooke's election to a seat on the Delaware County board of commissioners (the "Commissioners"). Mr. Strong's letter indicated that he was seeking a position with the county, as either a "juvenile probation officer and/or Delaware County Building Commissioner." The letter discussed his experience and interest in mentoring youth and the objective on his resume indicated that he wished to obtain a juvenile probation officer position, but did not address any qualifications or interest in serving as the building commissioner. Ultimately, Mr. Strong was appointed building commissioner by a three-member elected board of commissioners consisting of Democrats John Brooke and Larry Bledsoe, and Republican Tom Bennington ("the Commissioners"). The building commissioner position had a one year term, therefore Mr. Strong had to be re-appointed by the Commissioners each year. Mr. Strong was re-appointed building commissioner for the years 2008, 2009, and 2010. The 2010 appointment would end on December 31, 2010.

As building commissioner, Mr. Strong served as a department head who reported directly to the Commissioners. The Building Department consisted of Mr. Strong, zoning administrator Phil Taylor, and secretary Laura Murphy ("Ms. Murphy").  From the beginning, Mr. Strong and Ms. Murphy had a strained relationship because Ms. Murphy engaged in racially intolerant practices. In May 2008, after Mr. Strong made repeated complaints about her racially offensive

behavior, Ms. Murphy received a three-day suspension. As a result of continual racially harassing behavior directed toward Mr. Strong, Ms. Murphy's employment was eventually terminated in March 2009. Ms. Murphy was replaced by Paula Morrison ("Ms. Morrison"). Mr. Strong also experienced some racially harassing behavior from some of the contractors whom he believes "bristled at the notion of having to seek approval from an African-American." However, these "…repugnant discriminating vestiges of the past did not deter Mr. Strong from his tasks." (See Dkt. 38 at 4).

As the building commissioner, Mr. Strong was responsible for overseeing the County's building inspection and permit functions. His duties included performing plumbing, rough-in, heating and cooling, framing, and certificate of occupancy inspections, issuing permits and stop work orders, and other duties. Although there was no official job description for building commissioner on file at the County's human resources office, Mr. Brooke supplied a purported job description from his files. The description summarized the building commissioner position as "performing building inspections and reviewing construction plans."

On January 1, 2009, Todd Donati ("Mr. Donati") and Donald Dunnuck replaced Mr. Bennington and Mr. Brooke as Commissioners. In 2010, the County was facing a budget shortfall due to decreased revenues, and the Delaware County council asked all elected officials and department heads to cut their budgets by ten percent from the previous year for the 2011 budget. The council also offered a county-wide employee buyout program.  Employees who participated in the buyout program would stop working immediately, but would continue to be paid through the end of the year.  A condition of participation in the buyout program was that the employee would not be eligible for rehire by the County for two years. Because of the projected budgetary shortfall, the Commissioners sought to consolidate the building and zoning

departments with the Delaware-Muncie Metropolitan Planning Commission ("Planning Commission"), the planning agency for the City of Muncie and unincorporated Delaware County. The County board of commissioners does not exercise direct control over the twelve member Planning Commission board. Day-to-day operations of the Planning Commission were run by director Marta Moody ("Ms. Moody"), who was appointed by the Planning Commission but did not report to the Commissioners. Ms. Moody agreed to consolidate the County Building Department into the Planning Commission, and it was decided that existing Planning Commission staff would handle the Building Department paperwork, and one inspector would handle both the building and zoning inspections. The consolidation plan would eliminate two positions from the Building Department, one inspector and one secretary. Mr. Donati, as president of the board of commissioners, presented the Commissioners' budget at the County council budget hearings in September and October 2010.  The proposed budget eliminated funding for the positions of building commissioner, zoning administrator, and building department secretary, and a combined building commissioner/zoning administrator position was added to the Planning Commission budget.  The County council approved the Commissioners' 2011 budget and consolidation plan in October 2010.

Shortly thereafter, County officials sent a letter to all employees and department heads explaining the buyout option. In October 2010, Mr. Donati met with Mr. Strong, Mr. Taylor, and Ms. Morrison to discuss the consolidation plan and buyout option.  Ms. Morrison, a Caucasian woman whose position was being eliminated due to the consolidation, took the buyout.  Neither Mr. Taylor nor Mr. Strong were interested in the buyout. Mr. Strong explained that he did not want to take the buyout because he did not want to become ineligible for employment with the County for two years. He told Mr. Donati that he would be graduating from college in December

4

2010 and he planned to take the test to be certified as a probation officer, and then would apply for a probation officer position opening in January 2011. Mr. Donati did not review either Mr. Strong or Mr. Taylor's resume before deciding that Mr. Taylor should be retained. Due to his seniority and the fact that he had construction-related experience, Mr. Donati retained Mr. Taylor, a Caucasian male, for the combined building commissioner/zoning administrator position in the Planning Department. The other Commissioners agreed and Mr. Taylor assumed the title of Building Commissioner/ Zoning Administrator. In this capacity, Mr. Taylor performed both his and Mr. Strong's duties of zoning and building inspections. Mr. Taylor continued to work out of the Building Department office for the remainder of 2010 and was scheduled to transition to the Planning Commission office in 2011.

Because Mr. Strong did not want to take the buyout and become ineligible to apply for a probation officer position with the County in 2011, Mr. Donati, along with presiding Judge Marianne Vorhees ("Judge Vorhees"), arranged for Mr. Strong to work in the probation department. Judge Vorhees agreed that Mr. Strong would "help out" in her court for the remainder of 2010 due to a probation officer vacancy. Mr. Donati believed assigning Mr. Strong to the probation office for the rest of his term would be beneficial to all concerned.  Mr. Strong would be able to maintain his employment with the County, gain experience learning about the probation office, and perhaps have an advantage when applying for the open probation officer position in January 2011. The Building Department and the probation office were both funded through the County's general fund, so Mr. Donati believed Mr. Strong could work for the probation office and continue to be paid from the building commissioner's line item in the salary ordinance.  Mr. Donati asked County attorney Mike Quirk to discuss the proposed arrangement

with Judge Vorhees, and she agreed to it.  There was a meeting between Mr. Strong, Mr. Quirk, and Judge Vorhees where the details of the arrangement were discussed.

Mr. Strong worked in the probation department for about a month, and then was informed by Judge Vorhees that the other judges no longer wanted him to work in her courtroom as they were concerned the arrangement violated Indiana's ghost employment statute.  On November 19, 2010, Judge Vorhees told Mr. Strong to go home and wait for instruction from Mr. Donati.

On November 22, 2010, Pam McCammon ("Ms. McCammon") in the human resources department received a telephone call from an individual looking for Mr. Strong.  The call had been transferred from the probation department to the human resources department.  Prior to this call, the human resources department had not been made aware that Mr. Strong was working in the probation department, but was under the impression he was still performing his duties as building commissioner.  It was then that the Commissioners learned Mr. Strong was no longer working in the probation department. When Ms. McCammon spoke with Mr. Strong, she suggested that he fill in for Mr. Taylor for the remainder of the year, as Mr. Taylor would be on vacation for three weeks. Mr. Strong declined the offer.  Because the Building Department office had already closed and was in the process of transitioning to the Planning Commission, there was no other position open for Mr. Strong.

Mr. Donati again discussed the possibility of Mr. Strong taking the buyout which would have allowed him to be paid through the end of the year, but again he declined because he wanted to be able to apply for the probation department opening in January 2011.  Mr. Donati then informed Mr. Strong that he had no other alternative but to terminate his employment, effective November 19, 2010.

6

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.   <u>DISCUSSION</u>

Mr. Strong alleges that he was terminated from his position as County building commissioner based upon his race, and his transfer to the probation department was a demotion and "set-up" by the Commissioners, to get rid of him by exposing him to liability for ghost employment. The County asserts that Mr. Strong's termination was part of a legitimate

consolidation plan of the Building Department and the Planning Commission, and that Mr. Taylor was selected to remain in the new building commissioner/zoning administrator based upon his seniority with the County, and his greater experience with construction.

## A.  Evidentiary Matters

As an initial matter, the Court must resolve the parties' evidentiary disputes.  In support of his opposition to the County's motion for summary judgment, Mr. Strong submitted affidavits from himself and from Mr. Brooke. The County objected to the majority of the averments in each of these affidavits, arguing that they are either inadmissible hearsay, self-serving statements, not based upon personal knowledge, or are inadmissible expert testimony. Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "[S]tatements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet this requirement." *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).  Mr. Strong purports to offer statements as an expert based upon his experience as Chair of the Muncie, Indiana Human Rights Commission and Mr. Brooke, who is an attorney, asserts that he is an expert based on his experience with civil rights law.  However, Mr. Strong failed to timely disclose this expert's testimony, as his Supplemental Rule 26 Disclosures (Dkt. 26) were stricken by Magistrate Judge Debra McVicker Lynch as untimely. Dkt. 27. Additionally, Mr. Strong has not adequately shown that either he or Mr. Brooke are qualified as an expert by knowledge, skill, experience, training or education, nor has he shown that their reasoning and methodologies are reliable.  *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

Mr. Strong filed a Response to the Defendant's Motion to Strike (Dkt. 48).  However, this filing is improper as the County did not file a separate motion to strike; rather, the County simply objected to the Court's consideration of some of Mr. Strong's evidence under Rule 56(c)(4) in its Reply. The proper response to the objections contained in Dkt. 46 would have been for Mr. Strong to file a motion for leave to file a surreply to respond to the County's objections to the admissibility of evidence cited in his response, within seven days of the County's reply and to limit the proposed surreply to new evidence and objections in the reply brief.  S.D. Ind. Local Rule 56-1(d).  Mr. Strong did not seek leave to file this additional brief, the brief is not limited to the County's objections, and it was not filed within seven days of the reply brief. Therefore, the Court *sua sponte* orders Docket 48 **STRICKEN**, and the Court will not consider it in its ruling on the County's motion for summary judgment.

Having reviewed the County's objections to the Affidavit of Marwin Strong (Dkt. 38-1) and the Affidavit of John H. Brooke, Esq. (Dkt. 38-2), the Court finds that the following averments from Mr. Strong's affidavit are inadmissible evidence either as hearsay, not based upon personal knowledge, legal conclusions, or constitute inadmissible expert testimony: paragraph 3 references to the lack of discretionary, policy-making functions; paragraph 4 in its entirety; paragraph 5 with reference to Mr. Brooke's experience and whether he would facilitate in pursuing a race discrimination charge; paragraphs 6, 7, 8, and 9 in their entirety; paragraph 10 regarding the results of Mr. Strong's "investigation" and his opinion regarding the unlawfulness of the County's action; paragraph 12 regarding the unlawful nature of Mr. Strong's displacement; paragraph 13 regarding Ms. Hall's authority to terminate Mr. Strong;  paragraph 20 regarding Mr. Taylor's qualifications and education, and the County's knowledge about Mr. Taylor's vacation; paragraph 21 in its entirety; paragraph 22 regarding the results of Mr. Strong's

"investigation"; and paragraphs 26, 27, and 28 in their entirety.  Dkt. 38-1.  The Court also finds

that the following averments from Mr. Brooke's affidavit are inadmissible evidence as either

hearsay, not based upon personal knowledge, legal conclusions, or as inadmissible expert

testimony: paragraph 5 in its entirety; paragraph 6 with regard to whether Mr. Strong's

discrimination charge had merit; paragraph 7 in its entirety; paragraph 8 with regard to

unlawfulness of conduct under the salary ordinance; paragraphs 9, 10, 11, and 12 in their

entirety; paragraph 13 with regard to any events occurring after Mr. Brooke ended his term as

County Commissioner in 2008; paragraph 14 with regard to Mr. Strong's performance after 2008

and whether Mr. Strong had discretionary, policy-making functions; paragraphs 15, 16, 17, 18,

and 19 with regard to any events occurring after 2008; and paragraphs 20 and 23 in their entirety.

Dkt. 83-2.

Finally, Mr. Strong asks the Court to strike the County's references to Mr. Strong as a

"joke" as irrelevant and spurious material under Federal Rule of Civil Procedure 12(f). Rule

12(f) allows parties to move to strike *pleadings* which contain "redundant, immaterial,

impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, a brief in support of

summary judgment is not a pleading, and therefore is not subject to Rule 12(f).  *See* Fed. R. Civ.

P. 7(a).  Therefore, it is not appropriate for the Court to strike the language from a response brief.

Mr. Strong also asks the Court to strike portions of the affidavits of Ms. McCammon, Ms. Hall,

and Ms. Moody as hearsay.  But Mr. Strong fails to identify which portions of these affidavits he

believes are hearsay, thus he has waived his objections to these affidavits.  *See Ferguson v. Med.*

*Coll. of Wis.*, 471 F. Supp. 2d 901, 906 (E.D. Wis. 2007) (sweeping assertion that declaration

and affidavit were inadmissible, without analysis, does not provide a basis to strike the

documents).  Therefore, the Court will not strike these affidavits, however, the Court will not consider those portions of the affidavits which constitute inadmissible hearsay.

**B.      Discrimination Claims**

Mr. Strong asserts claims under both Title VII and § 1981, asserting that he was demoted and terminated based upon his race.  Specifically, Mr. Strong argues that because of his race, he was demoted and then "set-up" by the County when Mr. Donati transferred him to the probation department, an action which subjected him to possible criminal liability under the Indiana ghost employment statute, all in an attempt to "get rid" of him. Mr. Strong also asserts that his removal from the building commissioner position prior to the expiration of his 2010 term was based upon his race.  The County argues that Mr. Strong was not an "employee" under Title VII because he was a policymaking level political appointee, and his position would be covered by the Government Employee Rights Act of 1991, 42 U.S.C. § 2000e-16b(a) ("GERA"), over which this Court does not have jurisdiction.  Alternatively, the County argues that even if Mr. Strong is an "employee" under Title VII, he cannot show that the decision to terminate him was based upon his race under either the direct or the indirect methods.

**1.      Title VII vs. Government Employee Rights Act**

In order to bring a claim under Title VII, a plaintiff must be an "employee" as defined by the statute.  The term "employee" for purposes of Title VII does not include any person chosen by an elected public officer "to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office."  42 U.S.C. § 2000e(f).  Individuals who fall under this exception may seek administrative remedies under GERA, which prohibits race, sex, national origin, and religious discrimination, as well as age and disability discrimination.  42 U.S.C. § 2000e-16b(a).  These

cases are heard by the Equal Employment Opportunity Commission ("EEOC") by an administrative law judge.  29 C.F.R. § 1603.217.  Petitions for judicial review of EEOC decisions are governed by the Administrative Procedures Act, and *de novo* review is unavailable. 42 U.S.C. § 2000e-16c(b).  District courts do not have jurisdiction to decide discrimination cases covered by GERA.  *Guy v. State of Ill.*, 958 F. Supp. 1300, 1307 (N.D. Ill. 1997).

An individual is a policymaking appointee if "the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Opp v. Office of State's Attorney of Cook Cnty.*, 630 F.3d 616, 619 (7th Cir. 2010).  When making such a determination, courts look to the powers inherent in the office rather than to the actual functions performed by the current office holder.  *Tomczak v. City of Chi.*, 765 F.2d 633, 640 (7th Cir. 1985).  "[D]etermining the powers inherent in a given office may be done without the aid of a finder of fact 'when the duties and responsibilities of a particular position are clearly defined by law and regulations.'"  *Opp*, 630 F.3d at 621 (quoting *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999)).  In *Opp*, the appellants' roles as Assistant State's Attorneys were clearly defined by statute; thus the court could determine whether they were covered by the ADEA as a matter of law.  *Id*.

The parties do not dispute that Mr. Strong was appointed by elected officials; however, they do dispute whether Mr. Strong was a policymaking appointee in his role as building commissioner.  The County asserts courts have held that department heads or high level officials, such as a highway department superintendent and the second-highest ranking individual in a city water department, are policymaking employees.  *Tomczak*, 765 F.3d at 641.  The County also argues that Mr. Strong had meaningful input into the County's building permit and inspection

program and had the ability to recommend changes to the County building code, stating that he once proposed fee increases. However, Mr. Strong argues that his duties consisted of primarily clerical-type functions of accepting and reviewing permits to ensure compliance with building, electrical, plumbing and heating/ventilation codes, as well as doing final inspections and issuing certificates of occupancy when construction was completed. Importantly, unlike the situation in *Opp*, the Delaware County building commissioner duties and responsibilities are not clearly defined by law or regulation, nor has the County been able to locate an official job description for the position. It is uncertain whether the job description provided by Mr. Brooke was ever adopted by the County or what time period it covered. Thus, the question of whether Mr. Strong was an employee or an appointee at the policymaking level cannot be determined as a matter of law and must be left to the finder of fact to make the determination. For these reasons, the Court will proceed to analyze Mr. Strong's claims under Title VII and § 1981, the only claims that could be adjudicated in this Court.

### 2.   Title VII and § 1981 Claims

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Mr. Strong also alleges discrimination in violation of 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." The applicable legal standards on liability for race discrimination are the same under Title VII and § 1981. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir.

2004).   Plaintiffs alleging discrimination under Title VII or § 1981 may prove such discrimination using either the direct or indirect method of proof.  *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 849-50 (7th Cir. 2008).  The direct method requires that the plaintiff produce evidence that the defendant was motivated by *animus* toward a protected class when he suffered some adverse employment action.  *Id.*  Proof under the direct method can be in the form of direct or circumstantial evidence.  *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012) (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009)).   "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes v. Ill. Dep't of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004).  A plaintiff can also prevail under the direct method of proof by "constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision maker.'"  *Id.* (quoting *Troupe v. May Dep't. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). However, the circumstantial evidence "must point directly to a discriminatory reason for the employer's action."  *Id.* (internal quotations omitted).

If a plaintiff cannot present evidence of discrimination under the direct method, he may pursue his claim using the indirect method.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the indirect method, a *prima facie* case for disparate treatment discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action, and (4) was treated less favorably than a "similarly situated" non-protected class member. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011); *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005).  If the plaintiff establishes a *prima facie* case of discrimination, the burden of

14

production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007). If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the defendant's explanation is pretextual. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). To establish pretext, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

### a. Direct method

Mr. Strong argues that he can prove his case using the direct method. He has not presented direct evidence of discriminatory intent, so he must present sufficient circumstantial evidence from which the fact finder could infer discrimination. The Seventh Circuit has articulated three categories of circumstantial evidence that typically make up a "convincing mosaic" of evidence under the direct method:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; [or] (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (quoting *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009)). Mr. Strong claims that this evidence comes in the form of systematically better treatment of Mr. Taylor, by the County; specifically, Mr. Taylor, a white male, was selected to perform the duties of the building inspector through

the end of 2010 and received a $5,000.00 raise when he assumed the combined role of building inspector and zoning administrator.  Mr. Strong also claims that he was put at risk for criminal prosecution when Mr. Donati assigned him to the probation department, and argues that assignment to a less favorable job is proof of unlawful discriminatory *animus*.  As additional evidence of the "convincing mosaic," Mr. Strong asserts that Mr. Donati told a racist joke in 2002 or 2003 and the County maliciously referred to Mr. Strong as a "joke" in their brief.[2]

Despite all of the evidence mentioned above, Mr. Strong does not cite to any evidence that would indicate that these actions were motivated by racial *animus*, and taken as a whole the evidence does not point directly to discrimination.  It cannot be said that the County's treatment of Mr. Taylor from September 2010 to December 2010 constituted "systematically better" treatment; he was essentially given a $5,000.00 raise for assuming the duties previously performed by two individuals.  Also, assuming that Mr. Strong's assignment to the probation department was in fact unlawful, the fact that Mr. Donati may have put multiple people, including himself and a judge, at risk for criminal liability does not show that he was motivated by racial *animus* toward Mr. Strong.  The only evidence Mr. Strong asserts in his "mosaic" that remotely relates to race is the joke of uncertain content that Mr. Donati told in either 2002 or 2003, several years prior to Mr. Strong's work with the County. But that comment was made in a social setting and did not concern Mr. Strong or his employment.  *See Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009) (a remark revealing discriminatory *animus* can only create an inference of discrimination if it was made by the decision maker at or around the time of, and referred to, the challenged employment action.) Further, the racially intolerant practices of Ms. Murphy were not tolerated and Ms. Murphy terminated by the Commissioners in March 2009.

---

[2] Mr. Strong's brief states that this comment was contained in the County's pleadings; however, there is no such mention in the County's Answer (Dkt. 8), and as stated above, briefs on motions for summary judgment are not pleadings.  *See* Fed. R. Civ. P. 7(a).

Finally, references in the County's brief to deposition testimony referring to Mr. Strong as a "joke" cannot serve as evidence that the County was motivated by racial *animus* at the time it decided to terminate Mr. Strong in 2010.  While it is certainly rude, the comment itself relates to Mr. Strong's purported skills as a building commissioner and is not in any way related to race. Therefore, the Court finds that Mr. Strong's discrimination claims fail under the direct method of proof.

### b.    Indirect method

Because Mr. Strong cannot prove his claim under the direct method, he must proceed under the indirect burden shifting method articulated in *McDonnell Douglas*.  The parties do not dispute that Mr. Strong is a member of a protected class, satisfying the first prong of the test. The County also does not dispute the fourth prong of the test, that a similarly-situated person outside of Mr. Strong's protected class—Mr. Taylor—was treated more favorably because he was not terminated and received a $5,000.00 raise.  With respect to the second prong, there is a question of material fact as to whether Mr. Strong was meeting the County's legitimate employment expectations.  The County claims Mr. Strong was unqualified to perform the building commissioner's duties and was not taken seriously by contractors due to his alleged lack of knowledge.  The County also claims that an audit in 2009 revealed documentation problems in the Building Department. However, Mr. Strong testified that he performed well as the building commissioner and the County continued to reappoint him for successive terms, from 2007 to 2010, contradicting their assertion that he was unqualified for the position.  The Court finds that there is a sufficient question of material fact on the second prong of Mr. Strong's *prima facie* case.

With regard to the third prong, the parties agree that Mr. Strong's termination was an adverse employment action; however, Mr. Strong also argues that his transfer to the probation department constituted an adverse employment action.  An adverse employment action is "a materially adverse change in the terms and conditions of employment, 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Fyfe v. City of Ft. Wayne*, 241 F.3d 597, 602 (7th Cir. 2001) (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996)) (additional citations omitted).  Generally, a reassignment is not an adverse action.  *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004).  Thus, Mr. Strong's assignment to the probation department in and of itself was not an adverse employment action.

In a similar vein, Mr. Strong argues that his transfer to the probation department was "adverse" because the arrangement amounted to ghost employment and/or violated the County's salary ordinance.  The Court is not in the position to make such determinations under Indiana or Delaware County law, but it is highly unlikely that a trier of fact would conclude that the Commissioners and Judge Vorhees would knowingly and intentionally expose themselves to a risk of criminal prosecution to "set up" Mr. Strong because of his race, as he claims.  In fact, Mr. Strong says that Judge Vorhees was a mentor and "like a sister to me" (s*ee* Dkt. 32-41 at 50-51). The Commissioners made special arrangements to transfer Mr. Strong to the probation department while still earning the same salary for the remainder of his original building commissioner term, and the transfer was meant to benefit Mr. Strong so he would not be subject to the two-year employment restriction by taking the buyout.  Additionally, the transfer was made to provide Mr. Strong an opportunity to gain experience in the probation department so he could have an advantage when applying for the probation officer position in 2011.  Thus, the

only adverse employment action taken against Mr. Strong for purposes of his discrimination claim is his termination.

Because there are questions of material fact with regard to whether Mr. Strong can prove a *prima facie* case of discrimination, the burden shifts to the County to articulate a legitimate, non-discriminatory reason for terminating Mr. Strong, and Mr. Strong must then be able to show that this proffered reason is pretext for discrimination.

The County asserts that Mr. Strong was terminated due to an elimination of the building commissioner position when the Building Department was consolidated with the Planning Commission, and the consolidation occurred in response to County budget cuts.  Additionally, the County says it chose to retain Mr. Taylor to perform the combined role of building inspector and zoning administrator based upon his seniority and construction experience.  The County asserts that it terminated Mr. Strong only after he refused to take the buyout, because there were no other positions that he was able or willing to perform for the remainder of 2010, including his unwillingness to fill in for Mr. Taylor during his vacation.  Thus, the County has met its burden under *McDonnell Douglas*, and Mr. Strong must show that this reason is pretext for discrimination.

In order to show that the County's proffered reason is pretext for discrimination, Mr. Strong must show that (a) the County's nondiscriminatory reasons were dishonest, and (b) its true reasons were based upon a discriminatory intent.  *Fischer v. Avande, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008).  An employee must do more than make bare assertions and speculations that the reasons given were used to conceal discrimination.  *Winsley v. Cook Cnty.*, 563 F.3d 598, 605 (7th Cir. 2009).  Mr. Strong must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [defendant's] proffered reasons that a reasonable person could find them

unworthy of credence and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).  The only admissible evidence that Mr. Strong puts forth to support his assertion that the reasons given for his termination were pretext are the alleged unlawfulness of his transfer to the probation department, his assertion that the Building Department did not actually close until January 2011, and an e-mail from Human Resources Director Amy Hall in which Mr. Strong asserts that she gave shifting explanations for his change in employment status.  Notwithstanding these assertions, Mr. Strong does not present any evidence that would link any of the actions taken by the County to his race, aside from his own speculation.  With regard to the email from Ms. Hall that Mr. Strong argues shows shifting explanations for his position change, the email merely reflects Ms. Hall's personal understanding of Mr. Strong's status based upon the lack of information provided to her, and she did not make any decisions regarding Mr. Strong's employment status.  Dkt. 39-2.  The Court is not in the position to determine the lawfulness of the County's decisions under state or county law, the propriety of the County's decision to transition the Building Department to the Planning Commission prior to the end of 2010, or its decision to try to avoid terminating Mr. Strong by transferring him to the probation department when he refused to take the buyout.  However, even if these actions were improper, Mr. Strong has not presented any evidence that they were related to his race and not due to the budget shortfalls that the County faced at the time, or even simply poor decision making. "Even an employer's erroneous decision making, exhibiting poor business judgment, is not sufficient to establish pretext." *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998).

As a final note, in their affidavits, Mr. Strong and Mr. Brooke assert the existence of a *de facto* system of excluding African-Americans from upper level positions and a "good old boy"

network in Delaware County Government. But there is no admissible evidence cited to support these assertions. Unsupported assertions of an "old boy network" without more, is insufficient to prove pretext. See *Farrell v. Butler University*, 421 F.3d 609, 615 (7th Cir. 2007).  Thus, the evidence cited by Mr. Strong does not present issues of triable fact as to whether the County's proffered explanation was pretext for race discrimination.

## IV.   CONCLUSION

The Court finds that there is a question of material fact as to whether Mr. Strong was an appointee subject to GERA, over which the Court would not have jurisdiction, or an employee under Title VII, over which the Court does have jurisdiction. However, viewing this fact in the light most favorable to Mr. Strong, and assuming that he was an employee for purposes of his claims under Title VII and § 1981, the Court finds that Mr. Strong has not shown that there are sufficient questions of material fact to support his claims.  For the forgoing reasons, the County's Motion for Summary Judgment (Dkt. 30) is **GRANTED**, and Mr. Strong's Title VII and § 1981 claims are **DISMISSED**.

**SO ORDERED**.

Date: 09/30/2013
_____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James D. Masur, II
ROBERT W. YORK & ASSOCIATES
jmasur@york-law.com

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com